*In Re:* ESTATE OF FRANCES SUSAN WILSON, Deceased.

197 So. 557
En Banc
Opinion Filed July 30, 1940

*Carey & Harrison,* for Appellant;

*Fisher & Sauls,* for Appellee.

BUFORD, J.—This is the second phase of the litigation growing out of the settlement of the involved estate to appear here. See Mitchell v. Bogue, 142 Fla. 787, 196 So. 306.

On November 23, 1938, Bogue as administrator *cum testamento* filed his petition in county judge's (probate) court.

*Inter alia,* the petition alleged:

"For the reasons explained in this petition, the administrator with will annexed, deems it for the best interest of the estate that the following described real property, being in Pinellas County, Florida, and belonging to this estate, be sold: Begin at SW intersection of Central Avenue and Disston Boulevard, in the City of St. Petersburg, and in Sec. 21-31-16, run thence West 50 feet, South 110 feet, East 50 feet, North to point of beginning.

"That there are debts of this estate owing for the administration of the same, together with administration ex-

penses and attorneys fees necessary to be paid and that he has no money sufficient to pay the same with. Among the debts incurred in the administration of this estate by the petitioner are:

"1.  Fire insurance of buildings on real
     property belonging to the estate........................$ 81.23
"2.  Recertification of abstracts ...............................  71.50
"3.  Repairs on property.............................................  14.85
"4.  Premium — Administrator's Bond......................  30.00
"5.  Court costs paid by administrator......................   2.04
"6.  Costs and expenses incurred and paid by
     Administrator's Attorney....................................  49.70
                                                  ─────────
                                                     $249.32

"The administrator has received the sum of $75.00 as rental and a refund on insurance premium of $8.30 or $83.30 which is insufficient to pay the expenses of this estate together with moneys necessary to be paid in the administration of this estate.

"4.  Petitioner further says that an action was instituted by one Jack Mason Smith as guardian, against this estate, claiming damages in the sum of $2,000.00. He employed counsel to defend this suit and they have prepared pleadings and the same is now at issue and ready for trial and has been placed upon the trial docket and probably will be called and assigned at trial date by a jury within the next few days. He has not paid his attorneys any retainer or any fees in connection with defending this suit and that it is necessary for him to obtain money for this purpose.

"He further says that an appeal was taken from this court to the Circuit Court of Pinellas County, Florida, by Miss Gertrude Mitchell from an order authorizing the sale of certain real property. He employed his counsel and directed

them to defend in such appeal and his attorneys have prepared his defense and successfully defended the same in the circuit court when the appeal was called and heard. The original appellant is now prosecuting an appeal from the circuit court of said county to the Supreme Court of the State of Florida on such matter and it is necessary for him to have counsel to represent him in such appellate proceedings and he has no money with which to pay his counsel. He has not paid or advanced any retainer or money either for fees or costs and expenses in this proceeding and that it is necessary that he do so. He has not had sufficient moneys to pay his attorneys, for their ordinary duties in connection with the administration of the estate, and has paid them none.

"5. That it will be to the best interest of the estate to sell the property described in paragraph '2' at public sale; it is necessary that said property be sold in order to pay the debts and expenses of administration of the estate, the balance to be held for distribution according to law; that petitioner does not have a definite offer for the purchase of this property, but is informed that there are persons who desire to purchase the same and he alleges that said property should be sold at public sale for cash at the best price obtainable, subject to confirmation by order of this court. In the event an order directing a sale of this property be entered, he avers that it is desirable that petitioner be authorized to advertise said sale for a period to be fixed by the court in a newspaper published' in St. Petersburg, Pinellas County, Florida, and that such advertisement should be in the form of a display advertisement rather than the ordinary legal form so as to attract more persons to the sale."

Notice of such petition was served on interested parties.

On December 15, 1938, Gertrude Mitchell filed her objections to the granting of the petition and, as grounds of objection, stated:

"(a)   There is no authority in law justifying an administrator to sell the land of the estate which he represents, for the purpose of paying the expenses of administration.

"(b)   It definitely appears from the records in the Court of the County Judge, and from the Public Deed Records of Pinellas County, Florida, that the two beneficiaries who are the only ones interested in the land described as: Begin at SW intersection of Central Avenue and Disston Boulevard in the City of St. Petersburg, and in Section 21-31-16, run thence W 50 feet, S 110 feet, East 50 Feet, North to Point of Beginning, have definitely exercised their right to make an election of reconversion, and this above·described property is now the sole and exclusive property of this objector, Gertrude Mitchell.

"(c)   It further appears from the records in this office that this is an ancillary administration, whereas the domiciliary administration was had in the jurisdiction of Pennsylvania, and since the election to reconvert this property and to take it as real estate has been made, there is no need for the expensive and burdensome ancillary administration to proceed further in this jurisdiction.   Any expenses which may have been incurred, should, and could, and should be properly charged back to the jurisdiction of the domiciliary administration.

"(d)   Since the right of reconversion has been duly exercised, it will result in a waste to continue the expensive and burdensome proceedings relative to this petition to sell the property of this objector."

On December 14 the court entered the following order:

"This matter came on to be heard upon the petition of

Lincoln C. Bogue, as administrator with will annexed of the above estate for authority to sell certain real estate of this estate, and proper notice of this application having been given to those entitled thereto, that the same would be heard on the 25th day of November, 1938, at Clearwater, Florida, at 9:30 A. M., and the administrator and his counsel having appeared at the said time and place and no other persons having appeared,

"Thereafter, C. I. Carey, Esq., of the firm of Carey and Harrison, telephoned the court that the same be heard later in the day at St. Petersburg, Florida, which request was granted, and at such time and place the administrator and his attorney and C. I. Carey, attorney for Gertrude Mitchell, appeared before the court, and it appearing that Mr. Carey requested a continuance of the hearing for the purpose of endeavoring to work out with his client a settlement of all litigation in these proceedings, and such continuance having been granted and now having come on to be heard again before me at St. Petersburg, Florida, on Wednesday, the 14th day of December, 1938, and it having been made to appear to the satisfaction of the court that it is for the best interest of this estate that the real estate be sold at public sale,

"It Is Thereupon Ordered that Lincoln C. Bogue, as such administrator with will annexed, be and he is hereby authorized and empowered to offer the following described real estate, being located in Pinellas County, Florida: Begin at the SW intersection of Central Avenue and Disston Boulevard in the City of St. Petersburg and in Section 21, Township 31 South, Range 16 East, run thence West 50 feet, South 110 feet, East 50 feet and thence North to point of beginning,—for sale at public auction to the highest and best bidder for cash. The sale shall be held within a period of not less than 30 days and not more than 45 days from the

date of this order, and prior to the holding of the sale, the administrator shall publish a notice in the St. Petersburg Times, a newspaper published in St. Petersburg, Florida, giving the details of the sale, description of the property, its location and the date, time and place of the same. The sale shall be held upon the premises and at such hour of the day as the administrator shall deem best and designate in such advertisement of the sale. The administrator is authorized to expend a sum of money not to exceed the sum of $45.00 for the purpose of advertising the property pursuant to this order, but nothing contained herein shall be deemed mandatory as to such expenditure within the limit above prescribed. Upon the making of the sale of this property, the administrator shall report the same to this court together with all material matters relative thereto for either confirmation or rejection as shall be proper."

This order was filed in the office of the county judge on December 15, 1938.

On January 4, 1939, notice of appeal to the circuit court and assignment of errors were filed in the county judge's court. After notice, the circuit court, on January 6th, 1939, fixed date for hearing appeal to be on February 15, 1939.

Motion to dismiss appeal was interposed and denied.

On January 17, 1940, order of circuit court affirming the order of the county judge, *supra,* was entered.

From that Order this appeal is prosecuted.

There are two assignments of error, viz.:

"Assignment of Error No. 1: The said Circuit Court erred in entering said order of affirmance, dated January 7, 1940, since it appears from the record, in this cause, that the order entered by the Judge of the County Court on December 14, 1938, was in error and contrary to the principles of law in such cases made and provided for that:

"(a)   The real estate ordered sold, was by the express terms of the will of decedent, Frances Susan Wilson, left to and for the sole and exclusive use of Friend A. Mitchell and Gertrude A. Mitchell, brother and sister, and that these sole beneficiaries had exercised the right of reconversion, prior to the date of the entry of the order of the Judge of the County Court under date of December 14, 1938, in that the brother had executed, delivered and filed a warranty deed conveying all of his interests in and to the land ordered sold as above stated, to his sister."

"Assignment of Error No. 2:   The order of affirmance entered by the Judge of the Circuit Court under date of January 17, 1940, was error for the further reason:

"(a)   This administration in the Court of the County Judge of Pinellas County, Florida, is an ancillary administration proceeding, whereas the domiciliary administration proceedings over this estate were held in the State of Pennsylvania and the assets of the estate being administered, in addition to the land thus ordered sold, consisted of valuable personal property, more than sufficient to pay all costs and expenses incident to the ancillary administration in Pinellas County, Florida, and, therefore, there was no need to sell this land of appellant for any purpose."

Appellant presents one question for our consideration, viz.:

"When a mother provides in her will that certain designated real estate shall be sold and the proceeds divided equally between her two children, a son and a daughter, both of whom are over twenty-one years of age and unmarried, may the brother deed all of his interest in the land thus ordered sold to his sister before administration of the land under the will has been effected, and thus accomplish reconversion, and when this deed has been executed and filed, may an ancillary administrator of the mother's estate

with her will annexed proceed to sell this land as a part of the ancillary administration proceedings?"

The record does not support the question. The question of reconversion is not so involved in the proceedings under consideration as to have any effect upon the merits of the controversy which we are to settle.

The controlling question is, May an ancillary administrator *cum testamento annexo* be authorized to sell real estate to procure funds with which to pay costs, expenses and attorneys fees incurred in the ancillary administration of the estate when there are no funds or other property in the hands of the ancillary administrator *cum testamento annexo* with which to pay such costs and expenses?

Section 188 of the Florida Probate Act of 1933 provides:

"ANCILLARY ADMINISTRATION. Upon the death of a non-resident of this State, leaving assets in this State, or credits due him from residents of this State, or liens upon property in this State, the domiciliary personal representative of such decedent may upon application have ancillary letters issued to him if qualified to act. Otherwise, the preference of appointment prescribed in this Act shall be applicable. If ancillary letters be applied for by other than the domiciliary personal representative, citation shall be served upon the domiciliary personal representative.

"To entitle such applicant to ancillary letters, there shall be filed with the petition a duly certified copy of so much of the domiciliary proceedings as will show: Either (1) the will, petition for probate, order admitting the will to probate, and letters testamentary, if there be such; or (2) the petition for letters of administration and letters of administration.

"The ancillary personal representative shall give like bond as personal representatives generally and all proceedings for appointment and in the administration of the estate shall

be, as nearly as may be, similar to those in original administrations.

"After the payment of all expenses of administration and claims against the estate, in accordance with this Act the County Judge may upon petition, order the remaining personal property in the hands of the ancillary personal representative to be transferred to the domiciliary personal representative.

"Ancillary personal representatives shall have the same rights, power and authority as other personal representatives in Florida with reference to the management and settlement of the estate and in addition are authorized to sell, lease or mortgage local property in the manner provided in this Act to raise funds for the payment of debts, claims and legacies in the domiciliary jurisdiction."

Section 105 of the Probate Act provides:

"PERSONAL REPRESENTATIVES TO TAKE POSSESSION OF ENTIRE ESTATE.

"The personal representative shall take possession of all the estate of a decedent, real and personal (except homestead), and the rents, incomes, issues and profits therefrom whether accruing before or after the death of the decedent, and of the proceeds arising from the sale, lease or mortgage of the same or any part thereof; and all such property and the rents, income, issues and profits therefrom shall be assets in the hands of the personal representative for the payment of legacies, debts, family allowance, estate and inheritance taxes, claims, charges and expenses of administration, and to enforce contribution and to equalize advancements."

In note following Section 127 of this Act the author, Mr. Redfearn, says:

"The prior statute (C. G. L. 5627) provided that where

no power of sale of real estate was given by will, or the, power granted required judicial intervention, sales could be made only as provided in the case of intestate estates. The provision of the former law (C. G. L. 5630-5642) for sales of real estate involved two proceedings, both complicated and highly technical, one for obtaining possession and the other for the sale. The provisions of Section 105 give the personal representative the possession of real estate. The foregoing section makes no distinction between real estate and personal property and gives the personal representative a statutory power of sale of both, upon giving such notice, if any, as is prescribed (Section 130) and within the limitations designated (Sections 129, 132, 135). The county judge must either authorize or confirm all sales before title will pass under this section."

We find in 21 American Jurisprudence, page 865, Section 882, the statement:

"Effect of Existence or Sufficiency of Personalty in Domiciliary Jurisdiction.—Although there is authority to the contrary, so far as the right of local creditors, in proper proceedings to apply for the sale of decedent's land there situate and to have their claims satisfied out of the proceeds of land is concerned, the existence of the personal estate of the decedent in the domiciliary jurisdiction, or its sufficiency for the payment of all debts, is, according to a number of authorities, immaterial. The same conclusion has been reached as respects domiciliary creditors, who in ancillary proceedings in the jurisdiction where the land is located are endeavoring to have it sold for the payment of their claims, it being held that it is not necessary that they show that the personal estate in the domiciliary jurisdiction has been first exhausted. Even where no administration has been had in the State where the land is situated, the creditor himself may

institute proceedings in such State to subject real estate of the decedent debtor to the payment of his demands, notwithstanding there may be personal property elsewhere for this purpose."

Section 124 of the Probate Act provides: that the personal representative shall pay the expenses of administration and the claim against the estate in the order named in the section. Class 1 is "costs, expenses of administration, compensation of personal representatives and their attorneys' fees."

It appears to be well settled in most jurisdictions that so far as the right of local creditors in proper proceedings to apply for the sale of decedent's lands situated in the State of the domicile of the creditors and to have their claim satisfied out of proceeds derived from the sale of such lands is concerned, the fact that there is undisposed of personal estate of the decedent in the jurisdiction of his domicile or whether or not such personal estate is sufficient for the payment of all debts is immaterial. See Cooper v. Ives, 62 Kan. 395, 63 Pac. 434; Lawrence's Appeal from Probate, 49 Conn. 411; Gilchrist & Cannon, 1 Colew (Tenn.) 581; Prescott v. Dufree, 131 Mass 477; Cowden v. Jacobson, 165 Mass. 240, 43 N. E. 98; Rosenthal v. Renick, 44 Ill. 202. The same rule which will apply to the right of creditors will apply to the ancillary administrator to procure funds with which to pay the costs and expenses incident to ancillary administration.

For further discussion and citation of authorities on this subject, see 81 A. L. R. 565, *et seq*.

It appears to be the universal policy of the law to preserve local assets (1) for the payment of costs and expenses of ancillary administration; and next for the satis-

faction of local creditors and thereafter to be applied to other just claims against the estate.

The order appealed from should be affirmed and it is so ordered.

Affirmed.

TERRELL, C. J., WHITFIELD, BROWN and CHAPMAN, J. J., concur.

THOMAS, J., agrees to conclusion.